NOT FOR PUBLICATION IN WEST'S HAWAII REPORTS OR THE PACIFIC REPORTER

**Electronically Filed
Intermediate Court of Appeals
29129
22-JAN-2013
08:03 AM**

NO. 29129 AND 29917

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


NO. 29129
BRIAN KIYOTAKA YAMAMOTO,
Plaintiff-Appellee, Cross-Appellant,
v.
LORI ANN LEIKO YAMAMOTO,
Defendant-Appellant, Cross-Appellee

and

NO. 29917
BRIAN KIYOTAKA YAMAMOTO,
Plaintiff-Appellee, Cross-Appellant,
v.
LORI ANN LEIKO YAMAMOTO,
Defendant-Appellant, Cross-Appellee


APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-D NO. 99-0521)


SUMMARY DISPOSITION ORDER
(By: Nakamura, C.J., Foley and Reifurth, JJ.)

Defendant-Appellant Lori Ann Leiko Yamamoto ("Mother") appeals from the March 28, 2008 Decision and Order Re: Short Trial Held on 3/7/08 (the "March 28, 2008 Decision & Order") and from the April 25, 2008 Order Granting in Part and Denying in Part Defendant's Motion for Reconsideration of Order Filed March 28, 2008, Filed April 7, 2008 (the "April 25, 2008 Order") entered in the Family Court of the First Circuit ("Family Court").[1] Plaintiff-Appellee Brian Kiyotaka Yamamoto ("Father") cross appeals from both, the March 28, 2008 Decision & Order and

---

[1] The Honorable Patricia C. Aburano entered the March 28, 2008 Decision & Order and the April 25, 2008 Order.

the April 25, 2008 Order. The appeal was assigned appellate case number 29129.

Mother subsequently appealed from the following orders entered by the Family Court: the March 18, 2009 Decision and Order, which granted in part and denied in part Mother's December 24, 2007 and March 10, 2007 motions for post-decree relief (the "March 18, 2009 Decision & Order"); the March 30, 2009 Amended Decision and Order; the June 3, 2009 Order Re Motions for Reconsideration (a) granting in part and denying in party Mother's March 27, 2009 Hawaiʻi Family Court Rules ("HFCR") Rule 59 motion for reconsideration and (b) denying Father's April 8, 2009 HFCR Rule 59 motion for reconsideration; and the June 3, 2009 Order Denying [Mother's] Cross Motion for Sanctions and Attorneys' Fees and Costs Filed May 15, 2009 (the "June 3, 2009 Order Denying Cross Motion").[2] On July 7, 2009, Father filed a notice of cross-appeal from the same four orders. This second appeal was assigned appellate case number 29917. On October 14, 2010, the two appeals were consolidated for disposition under appellate case number 29129.

On appeal, Mother asserts that the Family Court erred:[3] (1) by failing to void an agreement between the parties wherein Father agreed to allow the parties' youngest daughter ("LY") to attend a private school on the condition that Father would not be financially responsible for the tuition; (2) by refusing to direct Father to reimburse Mother for Father's pro rata share of LY's private school tuition since 2004; (3) by failing to award damages to Mother based on Father's failure to use his best efforts to secure scholarships for LY; (4) by failing to apply the doctrine of res judicata to the issues of the stock accounts and health insurance; (5) in determining

---

[2]     The Honorable Linda S. Martel entered the March 18, 2009 Decision & Order; the March 30, 2009 Amended Decision and Order; the June 3, 2009 Order Re Motions for Reconsideration; and the June 3, 2009 Order Denying Cross Motion.

[3]     Mother's points of error consist of a list of findings of fact ("FOF") and conclusions of law ("COL") that Mother contends were improperly entered. For the most part, Mother's arguments do not address the FOF or the COL or relate back to the points of error. "Points not argued may be deemed waived." Haw. R. App. P. 28(b)(7). Consequently, we do not address the FOF or COL and instead focus on Mother's arguments.

Father's income; (6) in determining past child support for the parties' adult dependent child ("KY"); (7) by refusing to modify visitation; (8) by denying Mother's motion for reconsideration and/or clarification pursuant to HFCR Rules 59(e) and 60(b), as well as Mother's motion to stay pursuant to HFCR Rule 62(d); and (9) by refusing to modify prior orders regarding dependency exemptions.

Father contends that the Family Court erred by (10) failing to impose sanctions against Mother and her counsel despite supporting evidence in the record. Furthermore, both parties allege that the Court erred by (11) denying their respective requests for attorneys' fees and costs.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we affirm the Family Court's decisions and address the parties' points of error as follows:

(1) The parties were divorced on December 11, 2000, pursuant to a Decree Granting Divorce and Awarding Child Custody ("Decree"). At the time of the divorce, the parties' children were attending public schools. Nevertheless, the Decree addressed the issue of prospective private school tuition in two sections:

> 3. CHILD CUSTODY AND VISITATION: . . . .
>
> . . . .
>
> A. Legal Custody: [Father] and [Mother] are awarded joint legal custody of their minor children, [KY], [BY], and [LY] (the "Children"), until further order of the Court. As joint legal custodians, the parties shall together make every major decision involving each of the parties' children. For each of the parties' children, such major decisions would include, among others, . . . major decisions involving the children's education, such as choice of school, change in school, advancement or retention[.] . . . . If [Father] and [Mother] are unable to agree on a decision concerning the Children that requires agreement, then the parties shall attempt to mediate their dispute before either party bring [sic] the matter back to Court.
>
> . . . .
>
> OTHER MATTERS COVERED BY THIS DECREE ARE AS FOLLOWS:
>
> . . . .

> 7.    Private School Tuition: [Father] shall be
> responsible for his pro rata share of private school tuition
> in accordance with line 13 of the Child Support Guidelines
> Worksheet and also in accordance with the income imputed to
> [Father] herein.  Likewise, [Mother] shall also be
> responsible for her pro rata share of said tuition.  In
> addition, [Father] shall use his best efforts to secure
> scholarship funds from Yama's Fish Market to cover the cost
> of said tuition regardless of his employment status.  The
> parties [sic] children [sic] however, are currently enrolled
> in public schools.

Paragraph 7 of the Decree expressly recognizes that the children were, at the time of the Decree, enrolled in public schools.  Consequently, Paragraph 3.A. applies when addressing whether the status quo should be adjusted and the children should attend private school.  Paragraph 3.A. requires that Father and Mother must agree on a "change in school" and, if they do not, then they will "attempt to mediate their dispute before . . . bring[ing] the matter back to Court."

An Agreement Regarding Hawaii Baptist Academy signed by the parties on September 21, 2004 ("Agreement") describes the terms of agreement regarding LY's private educational expenses. The Agreement is not contrary to the terms of the Decree, does not usurp the jurisdiction of the Family Court, and is not void as a matter of public policy.  Generally, without court approval, agreements between former spouses releasing one spouse from an obligation to pay child support are not valid and binding. *E.g.*, *Napoleon v. Napoleon*, 59 Haw. 619, 624, 585 P.2d 1270, 1273 (1978).  Those cases are distinguishable, however, because here the Family court approved the Agreement and the Agreement did not deprive the children of any support to which they were entitled under the Decree.

The Decree specifically envisioned that the parties would mediate "major decisions" of this sort before bringing them to court.  By negotiating the Agreement, the parties complied with the terms of the Decree.  While it would be preferable if the parties promptly presented agreements of this sort to the Family Court for approval, private school tuition here is not an element of child support, and the parties are free to privately contract to address the issue.  This is particularly true where, as here, the Family Court subsequently ratified the Agreement.

(2) Because we affirm the validity of the Agreement, we accordingly hold that the Family Court did not err in refusing to direct Father to reimburse Mother for LY's private school tuition.

(3) Mother argues that Father did not use his best efforts to secure scholarships for LY. Mother does not explain, however, how that contention – which mirrors the Family Court's own conclusion – translates into error. In the conclusion to her opening brief, Mother asks that "[Father] use his 'best efforts' in securing scholarship assistance from Yama's Fish Market, as well as any other source[.]"

Although Mother challenges the majority of the Family Court's FOF and COL, she does not explain how any of the FOF or COL relate to the issue of Father's failure to use his best efforts to secure financial aid or scholarship assistance for LY. Neither does Mother explain how the Family Court erred in concluding that Mother's claimed damages were speculative as there was no evidence that even if Father had provided the completed financial aid forms the family would have qualified for financial aid, and, if so, what the amount of that aid would have been. Consequently, Mother has not established that any related FOF is clearly erroneous or that any related COL is wrong.

(4) Mother explains her contention with regard to the Family Court's failure to apply the doctrine of res judicata:

> In the instant case, the issue of health insurance, in addition to the issue of the children's trust accounts, was litigated during the initial phase of the divorce. Father and Mother were the parties who litigated these issues. A final judgment was rendered on both issues in which Father was to provide health insurance for the children and Mother was awarded possession of the children's trust accounts. Although Father filed a motion for reconsideration for both issues, Father's motion was denied. The divorce decree, filed on December 11, 2000, memorialized the order of the court. Father is the party against whom the doctrine is being asserted and he was a party to the previous adjudication.

Essentially, Mother argues that the doctrine of res judicata should have prevented Father from subsequently seeking, and the Family Court from subsequently ordering, that Mother reimburse Father for one-half of the educational expenses incurred by the

parties' adult daughter from the educational account.[4] Furthermore, Mother argues that "Father should be ordered to reimburse Mother for all [of the children's medical and dental] bills presented[.]"

Mother's argument takes the fact that the Decree awards Mother possession and control of the children's trust accounts and assigns Father the obligation to provide health insurance for the children,[5] and the fact that Father filed an unsuccessful motion for reconsideration as to both issues, and concludes that because the two issues were "adjudicated" between the parties in 2000, the issues should not have been re-visited by the Family Court in its January 14, 2010 Findings of Fact & Conclusions of Law. Father contends that Mother did not timely allege res judicata as an affirmative defense in her answer and urges us to decline to consider the issue.[6]

Whether or not res judicata was properly raised below, the Family Court was correct in not applying it. The record shows that the issues and facts concerning KY's educational account during the post-decree proceedings were not identical and were not based on the same issues and facts that had been addressed at the time of the divorce. In the proceeding at issue, Father did not contest the original award of the children's accounts to Mother as the custodian but, rather, contended that KY's educational account needed to be considered in determining the appropriate amount of his contribution toward

---

[4] Mother correctly notes that the Decree refers to the accounts as "Children's Trust Accounts." In its Findings of Fact & Conclusions of Law, the Family Court refers to the accounts as "educational accounts." The difference is immaterial. What matters is the fact that Mother's award was limited to "control and possession of the parties' children's trust accounts which shall be used exclusively for the Children's educational benefit and welfare."

[5] Paragraph 4.C. of the Decree provided: "Children's Health Care: [Father] shall provide medical and dental insurance for the parties' Children. All uninsured medical and dental expenses of the Children shall be split equally (50-50), including ordinary and extraordinary expenses."

[6] Mother's response to Father's argument is incomplete as all copies of her Reply Brief (Docket No. 29917) are missing page 3. We make what we can of Mother's argument in the Reply Brief relating to the issue through the end of page 2.

KY's college education expenses. This was not an issue addressed in, or at the time of, the Decree.

As to the health insurance issue, the Decree's determination that Father should provide health insurance for the children was later modified in 2003, with Mother providing insurance and Father's child support obligation calculated on that basis. The fact that the Decree directed that Father should provide insurance does not address the fact that the responsibility was subsequently shifted to Mother.

Consequently, the issues related to the children's educational account and health insurance were different from the issues litigated at the time of the Decree. As such, the Family Court did not err in not applying the doctrine of res judicata as a bar to Father's claims.

(5) The Family Court did not err in determining Father's income. The income figures that Mother cites to for support were subsequently modified by the Family Court because of what the Family Court determined were a material change in circumstances; thus, her reliance on them is unfounded.[2] Mother fails to cite to anything in the record that would support her argument that the Family Court erred in determining Father's income in light of the unchallenged findings included in the February 11, 2003 Order; to the contrary, there was substantial evidence to refute Mother's claim that Father should be imputed an additional $1,900 per month.

(6) Mother challenges multiple FOF and COL related to the Family Court's determination of the amount of past child support that she owed to KY. Her argument, however, is limited to a single issue: whether the court erred in determining that she was to pay KY $770 per month in child support as contained in FOF 9h. The remainder of Mother's challenges to the other child support-related FOF or COL are therefore deemed to be waived. Haw. R. App. P. 28(b)(7).

---

[2] In the February 11, 2003 Order Regarding Defendant's Motion & Affidavit for Post Decree Relief filed October 15, 2001 ("February 11, 2003 Order"), the Honorable Matthew J. Viola found that "[Father] has met his burden and established through the evidence adduced at trial that a material change in circumstance has occurred with respect to his gross monthly income. . . ." Mother does not appeal from the February 11, 2003 Order.

Mother does not demonstrate that the Family Court clearly erred in determining that she owed KY $770 per month in back child support. An award of child support computed according to the Amended Child Support Guidelines ("ACSG"), as here, is presumptively correct unless exceptional circumstances warrant departure, and the party seeking a deviation from it has the burden of proof. HAW. REV. STAT. § 571-52.5 (1993); *Richardson v. Richardson*, 8 Haw. App. 446, 457, 808 P.2d 1279, 1286-87 (1991).

Although Mother contends that the Family Court failed to consider KY's earnings, property, or needs, she points to no evidence that establishes that claim. When determining if a child should contribute to their own support, courts must "recognize that an adult-student-son/daughter may have reasonable expenses in excess of those paid/payable by the payee-parent (with funds supplied by both parents) and may elect to work to obtain the money to pay those expenses." *Nabarette v. Nabarette*, 86 Hawai'i 368, 372, 949 P.2d 208, 212 (App. 1997). Here, the record establishes that KY had expenses in excess of those covered by child support payments from both Mother and Father; thus, KY's net income does not necessarily warrant a deviation from the child support formula set forth in the ACSG because her income does not exceed her reasonable needs.

Because Mother fails to demonstrate that the Family Court did not consider KY's earnings, property, or needs, and because it would have been well within the court's discretion to conclude under the circumstances that because KY had expenses in excess of the child support payments she received, no adjustment was necessary to reflect her additional income, the court did not abuse its discretion.

(7) The Family Court did not err in refusing to modify visitation. To obtain a change of a custody order, the movant "must show a material change of circumstances since the previous custody order, and must show that such a change of custody is in the best interest of the child." *Nadeau v. Nadeau*, 10 Haw. App. 111, 121, 861 P.2d 754, 759 (1993). The Family Court specifically found that Mother did not prove a material change of circumstances with regard to the issue of visitation, and Mother

does not direct us to any evidence establishing the court's error. Rather, she presents rhetorical questions challenging Father's ability to comply with the Family Court's order. As such, Mother fails to meet her burden under *Nadeau*, and the Family Court did not err in refusing to modify visitation in the manner sought by Mother.

(8) Mother contends that she "informed the lower court that the reconciliation of amounts owed to either Mother or Father was incorrect[,]" but that her motions "were simply ignored." Contrary to Mother's assertion, the Family Court did not "ignore" her motions. The June 3, 2009 Order Re Motions for Reconsideration addressed the issues presented in Mother's motion for reconsideration and her amended motion for reconsideration, even granting her motions in part.[8] Mother also fails to make an argument regarding the Family Court's treatment of her Motion to Stay in her opening brief, and so we deem the point to be waived. Haw. R. App. P. 28(b)(7).

With regard to Mother's second argument that the Family Court could have treated an untimely Rule 59(e) motion as a Rule 60(b) motion, Mother's Motion for Reconsideration was not untimely filed, and the Family Court did not treat it otherwise. In sum, Mother has demonstrated no error.

(9) The Family Court did not abuse its discretion in denying Mother's request to modify the dependency tax exemption. Mother does not challenge the original or continued award of the dependency-related tax exemption to each parent on an alternating annual basis. Rather, she contends that the Family Court erred in not subsequently modifying the award of the dependency exemption on the basis that she demonstrated a change in material circumstances.

The only material change to which Mother points is the increase in her income versus the decrease in Father's income

---

[8] Even if we were treat Mother's argument as a substantive one - that the Family Court erred in denying her motion to reconsider the reconciliation of amounts - we would have no basis upon which to evaluate the contention. Nowhere does Mother explain how the Family Court erred. *CSEA v. Doe*, 88 Hawai'i 159, 174 n.20, 963 P.2d 1135, 1150 n.20 (App. 1998). A conclusory statement is not argument. *State v. Vinuya*, 96 Hawai'i 472, 486, 32 P.3d 116, 130 (App. 2001). Therefore, we need not address the matter.

since issuance of the Decree. From that, Mother contends that because she "provides more than fifty percent (50%) of [the minor children's] support, [she] should be entitled to claim both children as tax dependency exemptions."

Modifications of a divorce decree must be based on substantial and material changes in the relevant circumstances that were before the court when it made the original order. HAW. REV. STAT. § 580-47(c). The Family Court specifically found that "Mother failed to prove any change in circumstance to justify modifying the prior orders regarding the dependency exemptions[,]" and Mother's argument, addressing only a singular change in circumstances, provides an insufficient basis upon which we could determine that the Family Court abused its discretion in not modifying the dependency exemption award, that the finding is clearly erroneous, or that the conclusion is wrong.

(10) The Family Court did not abuse its discretion or err as a matter of law by refusing to impose sanctions on Mother under HFCR 37, HFCR 11, or its inherent powers. Father does not demonstrate that he raised the issues of sanctions under HFCR 37 or the court's inherent powers before the Family Court below. Consequently, we disregard those points. Haw. R. App. P. 28(b)(4) ("Points not presented in accordance with this section will be disregarded."). Father did, however, raise the issue of HFCR 11 sanctions below.

A Rule 11 inquiry is "heavily fact-intensive, requiring careful consideration of the particular circumstances of each case, and involving questions of reasonableness, credibility and, often, motive." *In re Tax Appeal of Hawaiian Flour Mills, Inc.*, 76 Hawai'i 1, 15, 868 P.2d 419, 433 (1994) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 401-02 (1990)). "Because the trial court is better positioned than an appellate court to marshall and weigh the pertinent facts, its determinations are due a substantial degree of deference." *Id.* at 15, 868 P.2d at 433. "Deployed on the front lines of litigation, the trial court 'is best acquainted with the local bar's litigation practices and thus best situated to determine when a sanction is warranted to

serve Rule 11's goal of specific and general deterrence.'" *Id.* at 15, 868 P.2d at 433 (quoting *Cooter & Gell*, 496 U.S. at 404).

Father contends, but does not sufficiently demonstrate by referencing solely to the argument advanced in the memorandum he submitted to the Family Court, that Mother acted fraudulently in presenting false statements in her motions. Presented with a limited record, limited argument, and reference to a single argument by Mother in support of a single motion, we cannot conclude that the Family Court decision not to impose sanctions "clearly exceeded the bounds of reason or evidenced a disregard for rules or principles of law or practice to the parties' substantial detriment." *Maui Tomorrow v. State, Bd. of Land & Natural Res. of State*, 110 Hawai'i 234, 246, 131 P.3d 517, 529 (2006).

(11) The Family Court did not abuse its discretion by requiring each party to bear its own litigation expenses or by declining to enter specific findings of fact in support of that decision. Furthermore, the court did not err as a matter of law by declining to award attorneys' fees to Father.

Mother's claim for fees related to her efforts to have Father pay a pro rata share of KY's private school tuition fails because, as discussed above, under the Agreement, Father was not liable for any part of the tuition expenses to which he had not agreed.[9] Thus, Father did not violate the Decree.

Father, on the other hand, contends that he is entitled to attorneys' fees under HRS § 607-14,[10] because Mother's litigation of the Agreement's validity constituted an assumpsit claim, and, since Father prevailed, an award of attorneys' fees was mandatory. *See* HAW. REV. STAT. § 607-14. Mother's post-decree action, however, was directed at enforcing Father's

---

[9]     Mother also argues that, under the Decree's enforcement clause, Father should be liable for her attorneys' fees related to her efforts to have the court clarify or redetermine certain amounts owed by each party. Such matters, however, do not implicate Father's compliance with the Decree, and, thus, related attorneys' fees are not awardable under the Decree's enforcement clause.

[10]     HRS § 607-14 provides that: "In all the courts, in all actions in the nature of assumpsit . . . , there shall be taxed as attorneys' fees, to be paid by the losing party . . . , a fee that the court determines to be reasonable . . . ." HAW. REV. STAT. § 607-14 (2011).

obligations under the Decree.   Such action is not in the nature of assumpsit.  *Compare 808 Dev., LLC v. Murakami*, 111 Hawaiʻi349, 366, 141 P.3d 996, 1013 (2006) ("Assumpsit is a *common law* form of action which allows *for the recovery of damages* for non-performance" of contractual or quasi-contractual obligations (quoting *Blair v. Ing*, 96 Hawaiʻi 327, 332, 31 P.3d 184, 189 (2001)), *with AIG Hawaiʻi Ins. Co. v. Bateman*, 82 Hawaiʻi 453, 456, 923 P.2d 395, 398 (1996) ("Rescission and cancellation are equitable remedies.").[11]/

Father also contends that, regarding the matters resolved by the court's March 18, 2009 Decision & Order and the March 30, 2009 Amended Decision and Order, the Family Court abused its discretion by not entering specific findings of fact in support of its determination that each party bear their own litigation costs and by declining to award Father attorney's fees.

Ordinarily, under the "American Rule," each party bears its own litigation costs.  *Lee v. Aiu*, 85 Hawaiʻi 19, 32, 936 P.2d 655, 668 (1997).  HRS § 580-47(f) authorizes a deviation from this rule; it provides a family court with broad discretion to award attorneys' fees in matters relating to revision or enforcement of orders pursuant to a divorce decree. *See* HAW. REV. STAT. § 580-47(f); *Doe v. Roe*, 85 Hawaiʻi 151, 164, 938 P.2d 1170, 1183 (App. 1997).

Under HRS § 580-47, where a family court declines to award attorneys' fees to either party, it is generally not required to enter accompanying findings of fact.  *See Jane Doe VII v. Richard Roe VII*, 8 Haw. App. 437, 809 P.2d 449 (1991)[12]/.

---

[11]/    In relation to the litigation surrounding the Agreement, Father also argues that because he completely prevailed, there was no equitable basis to decline a fee award.   However, Father did not completely prevail; in validating the Agreement, the court also ordered Father to complete and submit financial aid paperwork, as he had previously agreed, but neglected, to do. Furthermore, given that Mother remained wholly responsible for tuition incurred throughout the duration that she enrolled LY in private school, we cannot say that the Family Court abused its discretion in declining to award fees.  *See* HAW. REV. STAT. § 580-47(f) (enumerating factors for the court to consider when determining a fee award for post-divorce-decree matters).

[12]/    In *Doe VII*, the family court denied a motion to modify child support and denied attorneys' fees as well, stating only that "it is equitable for the parties to pay their own attorney fees and costs."  *Id.* at 442-444,

This practice comports with both the default American Rule and with the standard of review for family court decisions, which requires a manifest abuse of discretion before a family court's decision will be disturbed. *See In re Doe*, 77 Haw. 109, 115, 883 P.2d 30, 36 (1994).

Here, we conclude that the Family Court's failure to enter specific findings of fact does not prevent meaningful appellate review of its decision to deny the requests of both parties for the award of attorneys' fees and costs. Rather than resolving only the question of increased child support, *see Doe VII*, 8 Haw. App. at 444, 809 P.2d at 453, this order resolved multiple issues with each party prevailing on some, but not all, matters. Mother recognizes that she did not prevail on several of her claims (and, conversely, that Father did prevail), but importantly, she successfully moved for and obtained sole legal custody of BY and LY. Additionally, much of the order reconciled various overpayments and amounts owed by each to the other party, netting these to determine a final amount owed. On this record, we cannot say that either party prevailed, and certainly not to the point that entry of specific findings of fact was required before requiring the parties to pay their own way.

Similarly, on this record, the Family Court's decision to not award Father attorneys' fees did not clearly exceed the bounds of reason. *See In re Doe*, 77 Haw. at 115, 883 P.2d at 36. While Mother's income was roughly twice that of Father's, the respective merits of the parties' positions and the burdens imposed on each did not necessarily warrant an award of fees. *See* HAW. REV. STAT. 580-47(f). Therefore, the court did not abuse its discretion in declining to award attorneys' fees to Father.

Therefore,

---

809 P.2d at 452-53 (bracket omitted). This court, characterizing that statement as conclusory, nevertheless ruled that such explanation was adequate given that the motion was denied. *Id.* at 444, 809 P.2d at 453. Additionally, in light of its decision vacating the order denying an increase in child support and remanding, this court advised that a conclusory explanation is inadequate where the motion for modification is granted, and "there is no [other] express or apparent explanation on the record." *Id.*; *accord Richardson*, 8 Haw. App. at 459, 808 P.2d at 1288. This court further stated that such explanation "may be adequate with respect to divorce cases culminating in the entry of the initial child support order." *Doe VII*, 8 Haw. App. at 444, 809 P.2d at 453.

IT IS HEREBY ORDERED that the March 28, 2008 Decision & Order; the April 25, 2008 Order; the March 18, 2009 Decision & Order; the March 30, 2009 Amended Decision and Order; the June 3, 2009 Order Re Motions for Reconsideration; and the June 3, 2009 Order Denying Cross Motion are affirmed.

DATED:   Honolulu, Hawai'i, January 22, 2013.


On the briefs:

Marrionnette L.S. Andrews and
Cheryl Y. Arakaki
for Defendant-Appellant/
Cross-Appellee

John W. Schmidtke, Jr.
for Plaintiff-Appellee/
Cross-Appellant

Chief Judge

Associate Judge

Associate Judge